**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| FOTOMEDIA TECHNOLOGIES, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:07-cv-255 |
| | § | |
| AOL, LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |
| | § | |

| | | |
|---|---|---|
| FOTOMEDIA TECHNOLOGIES, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:07-cv-256 |
| | § | |
| ALLTEL COMMUNICATIONS, INC., ET AL., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

After considering the submissions and the arguments of counsel, the Court issues the following order concerning the claim construction issues:

## I.  Introduction

Plaintiff FotoMedia Technologies, LLC ("FotoMedia") filed this suit against two different sets of defendants on the same day, June 19, 2007.  Defendants in Case No. 2:07-CV-255 (the "Internet Action") are AOL LLC, Photobucket.com, Inc., Shutterfly, Inc., CNET Networks, Inc., and Yahoo! Inc. (collectively, the "Internet Defendants").  Defendants in Case

1

No. 2:07-CV-256 (the "Cell Phone Action") include Alltel Communications, LLC, Sprint Spectrum, L.P. d/b/a Sprint PCS, T-Mobile USA, Inc., and Cellco Partnership d/b/a Verizon Wireless (collectively, the "Cell Phone Defendants"). Both actions involve the same patents, namely United States Patent Nos. 6,018,774 ("the '774 patent"), 6,542,936 ("the '936 patent") and 6,871,231 ("the '231 patent") (collectively, the "patents-in-suit"). Although both sets of defendants jointly dispute the construction of several claim terms of the patents in suit, the Cell Phone Defendants separately argue a few additional claim terms. These additional disputes include the three sets of terms related to "computer," "browser," and "message."

## II.    Background of the Technology

### 1.    The '774 and '936 Patents

The '774 and '936 patents describe a system used for creation and distribution of electronic postcards and other formats of electronic images. The '936 patent is a continuation of the '774 patent. The system disclosed in these patents allows users to transfer digital images to a server, from where they could be processed into a presentable display to be viewed by other individuals who would be notified by the server. The inventors acknowledge that at the time of filing, technology existed to email pictures and distribute pictures through "predesigned webpages." However, the inventors assert that none of the existing mechanisms allowed a user to transfer digital pictures to a server, process those pictures into a "display" and send a notification, including an identifier, to one or more individuals to view the "display." The identifier is used by the recipient to retrieve or view the display via a browser.

The '774 patent, entitled "Method and System for Creating Messages Including Image

Information," issued on January 25, 2000 from Application No. 08/887,616, filed July 3, 1997.

The '774 patent contains six claims of which only claim 1 is independent.   The '936 patent,

entitled "System for Creating Messages including Image Information," issued on April 1, 2003.

The '936 patent contains twenty claims of which claims 1, 8 and 17 are independent claims.

The abstract common to both patents states:

> A system for creation of an image display such as an electronic postcard. The system interacts with a user to create and configure the display. The user provides the image data to the system and optionally specifies a message and addressee for the image display. The system creates the display, comprising a mixture of image and textual data, and sends a notification including identification of the display to a specified addressee, for instance, the recipient of the postcard. The addressee can then request receipt of the display from the system via the identification information sent by the system.

'774 Patent, at Abstract.

Claim 1 is exemplary of the '774 patent and reads as follows:

> 1. A method of sharing image data between a user and a recipient via a server adapted to communicate with a sending computer and a receiving computer, the server executing the steps of:
>
> receiving image data embodying an electronic image, the image data transferred under control of the user at the sending computer, the image data residing in the sending computer or an image source separate from and in communication with the sending computer;
>
> storing the received image data;
>
> associating an identifier with the stored image data, the identifier adapted for use in retrieving the image data via a browser running on a computer;
>
> receiving a message address from the sending computer for use in sending messages to the recipient;
>
> generating a message including the identifier; and
>
> sending the message to the receiving computer for retrieval by the recipient.

'774 Patent, at Cl. 1.

**2.      The '231 Patent**

The '231 patent claims a system and method of controlling access to image metadata –
information such as album titles, image captions, tags, comments, and other information related
to an image – separate from access to the image itself.  The system allows for "roles" to be
defined for users.  The metadata elements can be restricted based on these user roles.  Once a
request for metadata is received, the system compares the role of the user requesting the data to
roles associated with the metadata elements.  If the user is allowed access to that metadata
element, the system sends that data back to the user.

According to the inventors, earlier systems may have required images and metadata to be
treated as a single unit.  This invention claims to allow different treatment to be given to the
actual image and the data about the image.  Further, the inventors maintain that the prior art only
allowed lists of users, known as access control lists, to be defined as to who would or would not
have access to the image and the metadata.  The inventors suggest that this system determines
rights based on the roles of the user, such as job titles or other abstract forms, rather than the
actual identity of the users.

The abstract states:

> A system and method for controlling access to image metadata is disclosed, where
> metadata elements are defined for an image. The method and system include
> associating users who will access the image with roles, and associating the roles
> with individual metadata elements. In response to receiving a request for access to
> the metadata by a particular user, the user's role is determined from the request
> and the user's role is compared to the roles associated with the metadata elements
> to determine which metadata elements to make available to the user.

'231 Patent, at Abstract.

Claim 1 is exemplary of the '231 patent and reads as follows:

1.     A method for controlling access to image metadata, comprising the steps of:

(a)     defining metadata elements for an image;
(b)     associating users who will access the image with roles;
(c)     associating the roles with individual metadata elements;
(d)     receiving a request for access to the metadata by a particular user, wherein the user's role is determined from the request; and
(e)     comparing the user's role to the roles associated with the metadata elements to determine which metadata elements to make available to the user.

'231 Patent, at Cl. 1.

## III.    General Principles Governing Claim Construction

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. Under the patent law, the specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. A patent's claims must be read in view of the specification, of which they are a part. *Id*. For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id*. "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's claims. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). And, although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d at 1312 (emphasis added) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id*. The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id*. at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention. The patent is addressed to and intended to be read by others skilled in the particular art. *Id*.

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*. Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id*. at 1315 (*quoting Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims. *Id*. at 1314-17. As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. The prosecution history helps to demonstrate how the inventor and the PTO understood the patent. *Phillips*, 415 F.3d at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and

thus be less useful in claim construction proceedings. *Id*. Nevertheless, the prosecution history is intrinsic evidence. That evidence is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims.

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Id*. at 1319-24. The approach suggested by *Texas Digital*–the assignment of a limited role to the specification–was rejected as inconsistent with decisions holding the specification to be the best guide to the meaning of a disputed term. *Id*. at 1320-21. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of the claim terms within the context of the patent." *Id*. at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id*. What is described in the claims flows from the statutory requirement imposed on the patentee to describe and particularly claim what he or she has invented. *Id*. The definitions found in dictionaries, however, often flow from the editors' objective of assembling all of the possible definitions for a word. *Id*. at 1321-22.

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the

court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id*. at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

The patents in suit include claim limitations that fall within the scope of 35 U.S.C. § 112 ¶ 6. Section 112 ¶ 6 states "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure. . . in support thereof, and such claim shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof." 35 U.S.C. § 112 ¶ 6 (2007). The first step in construing a means-plus-function limitation is to identify the recited function. *See Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250 1258 (Fed. Cir. 1999). Then, the court must identify in the specification the structure corresponding to the recited function. *Id.* The "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Medical Instrumentation and Diagnostics, Corp. v. Elekta AB*, 344 F.3d 1205, 1210 (Fed. Cir. 2003) (*citing B. Braun v. Abbott Labs*, 124 F.3d 1419, 1424 (Fed. Cir. 1997)).

The patentee must clearly link or associate structure with the claimed function as part of the quid pro quo for allowing the patentee to express the claim in terms of function pursuant to § 112 ¶ 6. *See id.* at 1211; *see also, Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1377 (Fed. Cir. 2001). The "price that must be paid" for use of means-plus-function claim language is the

9

limitation of the claim to the means specified in the written description and equivalents thereof. *See O.I. Corp. v.Tekmar Co.*, 115 F.3d 1576, 1583 (Fed. Cir. 1997).

If a patent purports to use software as the structure to perform the claimed function, a failure to associate that software with the recited function constitutes a failure to particularly point out and claim that particular structure as a means of performing the function. *See Medical Instrumentation and Diagnostics Corp.*, 344 F.3d at 1211. Further, it is important to determine whether one of skill in the art would understand the specification itself to disclose the structure, not simply whether that person would be capable of implementing the structure. *See Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999). Fundamentally, it is improper to look to the knowledge of one skilled in the art separate and apart from the disclosure of the patent. *See Medical Instrumentation and Diagnostics Corp.*, 344 F.3d at 1211. The court now turns to a discussion of the disputed claim terms.

## IV.    Terms in Dispute – the '774 and '936 Patents

### 1.    "a server"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"a server"* | one or more server computers | one server computer |

10

The dispute between the parties concerning the construction of "a server" is whether the claimed systems and methods may include multiple server computers, and whether steps recited in the claims can be divided among these server computers.

The Federal Circuit has held that generally, the use of 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'  *Free Motion Fitness, Inc. v. Cybex Int'l Inc.* 423 F.3d 1343, 1350 (Fed. Cir. 2005).  However, "a" may be properly construed as being singular when a plural construction is inconsistent with the claim context and neither the specification nor the drawings disclose more than "one".  *See id.* at 1356 (Prost, J., dissenting) (citing *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1105-06 (Fed. Cir. 1996)).

The plaintiff points out that the specification discloses multiple servers.  *See* '774 patent, at col. 2, ll. 49-52 ("The system comprises at least one server computer connected to a network."); *id.* at Fig. 1 (depicting multiple servers as part of the system disclosed).  Fotomedia further argues that an electronic postcard may contain links to websites found on multiple servers.  Therefore, Fotomedia contends that the term "a server" cannot be limited to a single server computer.

In response, the defendants argue that issue is whether the steps recited in the claims at issue can be performed by different servers.  They contend that even if the patent teaches an overall system having one or more servers, a single server must execute all of the steps of the claimed invention.  According to the defendants, a system which distributes processing of the various claimed steps amongst multiple servers would be beyond the scope of the claims.  Turning to the specification, the defendants point out that it does not suggest or teach the concept

11

of a distributed system anywhere.[1]  Defendants argue that if such a system were claimed, the disclosure would have to spell out the implementation, including the integration of various components, conflict resolution between the multiple servers, and other related problems that would arise from utilizing such a system.[2]

The Court concludes that the defendants' argument is persuasive.   Under these circumstances, there is convincing evidence that the scope of the invention is limited as proposed by the defendants, even in light of the general rule that use of 'a' in a claim would mean 'one or more.'  *See Insituform Techs.*, 99 F.3d at 1106 (the rule does not apply where the only correct and reasonable interpretation of claim limits the scope of the claim to singular).  The Court does not rule that there cannot be more than one server, each capable of performing all of the recited steps, in the claimed system.  However, in light of the disclosure, the inventors did not claim a system that could distribute the steps of the claims at issue between various server computers.[3]

"A server" is construed as "one server computer."

## 2.     "receiving image data"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"receiving image data embodying an electronic image, the image* | No construction necessary | sending by the user at the sending computer image data embodying an |

---

[1] To the contrary, Figure 2 in the specification shows a single server 31 as containing all of claimed functionality. *See* '774 patent, at Fig. 2.

[2] The defendants also note that the inventor himself has testified to the difficulty of integrating such a system.  The Court, however, agrees with Fotomedia that inventor testimony may not be relied on for claim construction purposes.  *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346 (Fed. Cir. 2008).

[3] Fotomedia also argues that the Court ignore any issues of enablement and written description in construing the term in dispute.  Federal Circuit law counsels otherwise.  *See Nystrom v. TREX Co.*, 424 F.3d 1136, 1144–45 (Fed. Cir. 2005) ("As explained in *Phillips*, [the patentee] is not entitled to a claim construction divorced from the context of the written description and prosecution history.")

| **data transferred under control of the user at the sending computer"** | | electronic image, and receiving at the server the image data |
|---|---|---|

With respect to this term, the key dispute is whether a limitation reciting a user sending the image data has to be included as a step of the claims at issue. Plaintiff contends that no further construction is necessary because the claim language provides that it is the server that "receives" the image data. FotoMedia contends that the preamble requires the step be performed "by the server," and defendants' proposed construction would require the "receiving" to be performed "at the server." Further, Fotomedia argues that there might be instances where the server already possesses the image data. In such a case there would be no need for the user to send such data.

Defendants argue that prosecution history makes it incontrovertible that a user (sender) must provide the image to be shared. As originally filed, the "receiving image data" step in Claim 1 read "receiving image data representing an electronic image." The Examiner rejected this claim over the *Wright* patent disclosing an electronic greeting card system that allowed users to send cards by pulling images from a library of images stored on a server. *See* '774 File History, January 11, 1999 Resp. to Office Action at 2-3. The sender's computer in the *Wright* system had a local listing of library images and would simply tell the server which of the images it wanted to pull into the electronic greeting card being processed. *Id.* Therefore, the Examiner rejected the Applicants' claim language that broadly claimed "receiving image data" at the server, regardless of where it came from. In response, the Applicants distinguished their claims from *Wright* based on the source of the image:

13

> The system of Wright et al. teaches selecting a greeting card image stored on a *central* image server. The presently claimed invention is directed to a system wherein the image data is created by the sender, and not selected from a preexisting list of greeting card images.

*Id*. at 3.

The amended language, as the claim issued, reads:

> receiving image data embodying an electronic image, the image data transferred under control of the user at the sending computer, the image data residing in the sending computer or an image source separate from and in communication with the sending computer.

'774 Patent, col. 14, ll. 23-27.

In the Notice of Allowability, the Examiner wrote: "None of the prior art of record teaches . . . the image data residing in the sending [sic] and transferred under control of the user at the sending computer . . . ." *See* '774 File History, Notice of Allowability, at 2.

Defendants contend that the amended "receiving" limitation must therefore be read as requiring that the user provide the image to be shared. Defendants propose that the Court ignore any inconsistency between this requirement and the fact that the preamble recites that all the steps are performed "by the server." *See N. Am. Container, Inc. v. Plastipak Packaging, Inc*., 415 F.3d 1335, 1344-46 (Fed. Cir. 2005) (adopting construction preserving inconsistency added during prosecution). According to the defendants, it is important that the Court inform a lay jury, unfamiliar with the prosecution history, that this claim requires that a user issue a command to send the image data.

Fotomedia responds by arguing that the claims were amended simply to identify the source of the received image, rather than to require a transfer step performed by a user. Although the Court disagrees with Fotomedia on the scope of the amendment, the Court concludes that the amendment already captures the requirement of the image data being sent by

the user at the sending computer.  *See Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1348 (Fed. Cir. 1998) (holding that the scope of an amendment made to overcome claim rejection should be determined in light of the written description, the prosecution history and the language of the respective claims).  What the amendment does not do is require a user to perform a step of the method.  *See BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 14381 (Fed. Cir. 2007) (reasoning that claim drafting allows a patentee to structure a claim to capture infringement by a single party or multiple parties).  This claim is drafted from the perspective of the server, not the sender.

  "Receiving image data" is construed as "receiving by the server, image data."

### 3. "storing"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"storing"* | copying or moving data to a storage medium | placing into a database |
| *"storage device"* | No construction necessary | device on which a database is stored |

  The parties disagree over whether storage requires storage in a database.  The defendants contend that in every instance where the specification refers to storage, the only storage disclosed is database storage.  The defendants point out that the specification includes an entire section dedicated to describing the various databases, entitled "Database on Server," describing both temporary and permanent storages as being in databases.  *See* '774 Patent, col. 4, ll.  65-67, col. 5, ll. 37.  Defendants argue that the lack of disclosure of any other type of storage medium in the specification mandates a limiting construction.

15

Fotomedia argues that defendants' proposed construction would be improper under the doctrine of claim differentiation. Fotomedia points out that the patentee has used the word "database" in claim 17 of the '936 patent, reciting "storing the received image in a database." *See* '936 Patent, Cl. 17. Fotomedia, therefore, contends that this requires that the term "storage" not be construed as a "database." Claim 17, however, includes other significant limitations that differentiate it from other claims. Moreover, the Federal Circuit has held that doctrine of claim differentiation cannot serve to broaden claims beyond their meaning in light of the specification. *Toro Co. v. White Consol. Indus., Inc*., 199 F.3d 1295, 1302 (Fed. Cir. 1999); *see also Netcraft Corp. v. eBay, Inc*., 549 F.3d 1394, 1400 n. 1 (Fed. Cir. 2008) ("While claim differentiation may be helpful in some cases, it is just one of many tools used by courts in the analysis of claim terms.").

Next, Fotomedia points to the specification as disclosing that "data are stored in the file system of the server in a directory specifically created to store the temporary image files, herein designated as the Temp Image Database 65." *See* '774 Patent, col. 5, ll. 19-22. FotoMedia argues that the inventors at least contemplated a file system storage, which need not necessarily be a database. The Court finds this argument unpersuasive. Turning to the very section of the specification that Fotomedia points to, the patentee designates these file systems as the "Temp Image Database." Defendants properly note that the specification lacks any teaching or support for storage in any other type of storage medium, either hardware or software. In light of the intrinsic record, the storage related terms are limited to database storage systems. *See Phillips*, 415 F.3d at 1317.

"Storing" means "placing into a database."

16

### 4.     "identifier"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
| --- | --- | --- |
| *"identifier"* | information for identifying image data | information uniquely identifying particular image data |

The issue here is whether an identifier must uniquely identify an image. Defendants contend that if the identifier did not uniquely identify a particular image, it would not be able to perform its stated purpose. Defendants point to the specification wherein the patentee refers to the data in the Card Database and the data in the Image Database being "keyed by a unique identifier," and that "[t]he URL includes the Card Key that uniquely specifies that particular electronic postcard." '774 Patent, col. 5, ll. 32-52, col 12, ll. 51-55.

Fotomedia's argument is that the specification sufficiently discloses use of the same identifier for multiple cards. The Summary of the Invention states that "one or more displays may be assigned a unique identifier." '774 Patent, col. 2, ll 54-55. Further, the specification discloses that the data in both the Card Database and the Image Database are "keyed by a unique identifier." '774 Patent, col. 5 ll. 44–46. Fotomedia suggests that these are multiple images being keyed by the same identifier. This is not the case. The specification indicates that it is in fact the same postcard data that is stored in these two databases after the postcard is sent. '774 Patent, col. 5 ll. 32-33. Further, the specification goes on to explain that "this key [is] the information required for retrieving the electronic postcard data from the Card Database and Image Database." A non-unique card key would therefore fail in its utility by the patentee's own definition.

Therefore, "identifier" is "information uniquely identifying image data."

### 5.    *"Associating"*

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"associating"* | Plain and ordinary meaning. If the Court requires construction, "relating." | specifically and uniquely relating |
| *"associate"* | Plain and ordinary meaning. If the Court requires construction, "relate." | specifically and uniquely relate |
| *"associated with"* | Plain and ordinary meaning. If the Court requires construction, "related to." | specifically and uniquely related to |

The dispute here is similar to the "uniqueness" argument surrounding the "identifier" term. The defendants argue that the URL sent out to the viewer has to be specific and unique. Therefore, the defendants argue that if the association between an identifier or URL and a particular image or display is not specific and unique, the identifier or URL would not be able to perform its purpose, namely, enabling access to a specific image or display. Defendants contend that the specification repeatedly describes the relationship between the identifier and an image or display as specific and unique.

Fotomedia's argument is that the term "associate" is used in the specification in its ordinary meaning – to mean "relate." Therefore, Fotomedia urges that the Court should avoid construing it further. Fotomedia argues that the specification discloses an "identifier" that is unique, and Court should not introduce this limitation to the "associating" terms. The Court

18

agrees.  The Court has already construed the term "identifier" as being unique.  Therefore, there is no need to further import such a limitation into the "associating" terms.

The Court concludes that "associate" means "to relate."

### 6.    "the digital image"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"the digital image" and "the image data"* | No further construction necessary | the uploaded unprocessed image data |

First, the defendants seek to limit the term "the digital image" to its antecedent basis in claims 8, 9, 11 and 14 of the '936 patent.  Independent claim 8 recites that "a digital image" is uploaded to the server from a client computer.  Defendants ask the Court to construe any further recital of "the digital image" to the image that was "uploaded."  The defendants argue that the maxim that "[a] word or phrase used consistently throughout a patent claim should be interpreted consistently" applies to the use of this term throughout the claims at issue.  *Phonometrics, Inc. v. N. Telecom, Inc.*, 133 F.3d 1459, 1465 (Fed. Cir. 1998).  Defendants further propose to add "unprocessed" to the construction of this term.  They argue this uploaded, unprocessed image must be differentiated from an image processed post uploading, such as the one recited in claim 1.

Fotomedia argues that the plain language of the claim indicates that the digital image exists on the user's computer prior to the uploading, and later references to "the digital image" refer back to that same initially recited "digital image."  Therefore, Fotomedia argues, this digital image cannot be limited to only image data that is already uploaded.  The Court agrees.  It is

19

clear from the claim language that "the digital image" refers back to the initial reference of the digital image being uploaded by the user. *See Process Control Corp. v. Hydreclaim Corp.*, 190 F.3d 1350, 1356 (Fed. Cir. 1999) (finding that the presence of identical language clearly indicates that the later claim element refers back to the element initially introduced). Therefore, the Court finds it unnecessary to include this in the construction of the term. Further, the Court concludes that the defendants' proposed "unprocessed" limitation is also unwarranted.[4]

### 7.     "process"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"process"* | Storing and/or manipulating the image data | manipulate the electronic image data |

Fotomedia proposes that the Court incorporate "storing" as part of "processing." Fotomedia notes that the specification recites "processing on the server consists of one or more of the following: captioning, formatting, storing, . . ." '774 patent, col. 2, ll. 64-67. Here, Fotomedia argues, the patentee chose to be his own lexicographer and defined the term "process" to include the storing of data.

The defendants point to the use of the term "store" in the claims. Claim 1 of the '936 patent describes a program that directs a CPU to store electronic image data and to process the electronic image data. Defendants, therefore, argue that construing "process" to include "store," would lead to the result that the claim uses two different terms to mean "store." Further, the

---

[4] The Court also rejects defendants' request to apply these limitations to the term "the image data" in the original '774 patent claims.

defendants argue that specification discloses that the "server is adapted to store and process data," thereby treating these steps as separate.  '774 patent, col. 4, ll. 66-67.

Despite the language of the specification relied on by Fotomedia, the claim language requires that the "processing" step in claim 1 be read as being different and separate from the "storing" step.

"Process" means "manipulate the electronic image data."

## 8.     "generate a display"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
| --- | --- | --- |
| **"display"** | data that may be viewed | a fixed image that comprises graphics and/or text |
| **"generate"** | Plain and ordinary meaning. Alternatively, this term means "create." | make a visual representation of |
| **"generate a display"** | generate data that may be viewed | make a visual representation of a fixed image that comprises graphics and/or text |

The key dispute over these terms is whether the step of "generating a display" requires a process of visual representation of a fixed image.  Fotomedia asks the Court to construe the terms "generate" and "display" separately.

Fotomedia's proposed construction of "display" is "data that may be viewed." Fotomedia finds support for this in the specification which teaches that the claimed system creates "custom generated HTML pages." '936 patent, col.14 ll.53–60.  Fotomedia's proposed construction, however, fails to capture the visual nature of a display.

21

Defendants argue that the display must be a fixed image that contains graphics and/or text. Defendants contend that the specification repeatedly refers to the use of "fixed image files." *See* '936 Patent, col. 10, ll. 36-63, col. 12, ll. 31-67. Defendants argue that because the display may be composed of flattened image files, it too has to be is fixed. The specification discloses that the layout of the postcard is finalized as a "display" when the various data elements are compressed together in permanent image files such as a JPEG or GIF. The Court finds that these files need not necessarily be static or fixed.

"Display" is construed as an "image that comprises graphics and/or text."

The dispute over the construction of the terms "generate" and "generate a display" revolves around whether "generate" requires putting data into a visual form. Fotomedia proposes that "generate" should simply be construed as "create." Defendants, however, argue that claim 1 of the '936 patent restricts the use of a "display" for viewing purposes only. *See* '936 Patent, col. 14, l. 63 - col. 15, l. 2; *see also id.* at col. 2, ll. 62-64 ("data representing the display is in a format that allows for transmission to and viewing on a client computer"). The Court agrees that data should be in a format that allows representation of the display to the user.

Given the Court's construction of "display," the Court construes "generate a display" as "create a representation of an image that comprises graphics and/or text."

**9.     "associate a URL with the display"**

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"associate a uniform Resource locator (URL) with the display"* | No construction necessary | This step must occur after the generating step. |

The dispute here is whether the Court should impose a sequential limitation on claim 1 of the '936 patent. Because the "associate" step follows, and also refers to the "generate" step in the claim, defendants argue that the order of execution of the "associate" step is also a limitation of the claim.[5]  To support their argument, defendants rely on *Combined Systems*, wherein the Federal Circuit held that reference to a previously recited step forecloses – at least in the absence of compelling evidence to the contrary in the written description or prosecution history – a construction permitting the referred step to occur subsequent to the referring step. *See Combined Sys., Inc. v. Defense Tech. Corp. of Am.*, 350 F.3d 1207, 1211-12 (Fed. Cir. 2003).  The defendants argue that a similar limitation is mandated here.  Further, the defendants point to the sequence disclosed in the specification.  The user first fills in the electronic postcard, and then an email message is sent to the recipient with the associated URL. '774 Patent, col. 7, ll. 30-40.

Plaintiff responds that *Combined Systems* is limited to method claims, not to systems such as the one claimed here.  Fotomedia relies on this Court's *Superspeed* opinion.  *Superspeed, L.L.C. v. Int'l Bus. Machs. Corp.*, No. 2-07-CV-89, 2009 WL 383255, at *5 (E.D. Tex. Feb. 11, 2009).  In *Superspeed*, the Court rejected IBM's argument that a specific sequence of steps disclosed in the preferred embodiment is enough to impose that limitation on the claim.  *Id.* Here too, the Court is not convinced that there exists an express limitation in the claim language. *See Altiris Inc. v. Symantec Corp.,* 318 F.3d 1363, 1370 (Fed. Cir. 2003) ("First, we look to the claim language to determine if, as a matter of logic or grammar, they must be performed in the order written.")*; see also Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1343

---

[5] Claim 1 of the '936 patent covers a system with a CPU adapted by a program to, in part:
   generate <u>a display</u> including at least a portion of the processed electronic image data;

(Fed. Cir. 2001).  Although some systems claims might be read to incorporate a sequential limitation, the claim in this case does not necessarily require that the display generation step be completed prior to associating a URL with the display.  Defendants' proposed construction is rejected.

## 10.    "card key"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"card key" or "key"* | Information for identifying image data | a unique identifier that is created at the time the postcard is sent and which includes information for retrieving the electronic postcard data from a Card Database and an Image Database |

Defendants contend that the applicants have defined the term "card key" and the Court should adopt this definition.  The specification reads:

> The data in both the Card Database 63 and the Image Database 66 is keyed by a unique identifier <u>called the Card Key</u> that is created at the time the card is sent. This key—the information required for retrieving the electronic postcard data from the Card Database 63 and Image Database 64—is sent to the recipient of the card in a message.

'774 Patent, at 5:44-52

If the patentee decides to define a term a certain way, especially when he is aware that it could be defined a different way, the Federal Circuit has generally held the patentee to that definition.  *See Finnigan Corp. v. International Trade Comm'n*, 180 F.3d 1354, 1364 (Fed. Cir. 1999); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.").

---

associate a uniform resource locator (URL) with <u>the display</u> . . .

Fotomedia responds by asserting that any reference to a Card Key and the Card or Image Database in the specification is merely a description of an embodiment. It presents two arguments. First, Fotomedia notes that claim 9 of the '936 patent recites a card key that "identifies the digital image." Fotomedia argues that referring to the digital image should be different from referring to the electronic postcard, and, therefore, the construction of card key cannot be limited to a postcard. Second, it argues that the defendants' proposed definition of card key imposes an unclaimed temporal limitation – "at the time the postcard is sent." Despite Fotomedia's position, neither of its arguments explains why the description of "card key" in the specification should not be considered the inventor's definition. The Court adopts the patentee's own language for these terms.

The "Card Key" is "a unique identifier that is created at the time the card is sent and which is the information required for retrieving the electronic postcard data from a Card Database and an Image Database."

### 11.    "electronic postcard"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"electronic postcard"* | an electronic display of textual and/or graphical information that is representative of a postcard | a fixed image that contains graphics and/or text representing a postcard |

The defendants argue that the patent specification teaches only how the individual image elements of a postcard can be compressed together into two fixed image files, each representing the front and back of an electronic postcard. The defendants argue that because there is no other

formatting disclosed, the claimed postcard should be limited to this format.  As Fotomedia points

out, the specification discloses that the post card is at least composed of HTML pages.  *See* '936

patent, at col.6, ll.19–22.  Therefore, the Court finds that an electronic postcard should not be

limited to images.  The Court construes "electronic postcard" as an "electronic display that

contains graphics and/or text representing a postcard."

### 12.    "Computer" & "Browser"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"Browser/web browser"* | Plain and ordinary meaning. Alternatively, this term means "an application for browsing a network, such as the web" | a personal computer application that enables a user to view HTML documents |
| *"computer"* | A device having a processor for processing data | personal computer (PC) |

The Cell Phone Defendants separately propose the construction of few terms.  The first

dispute is over the scope of the "computer" terms.[6]  Fotomedia points out that the specification

discloses "*any other computer* capable of running a standard web browser." '774 patent, at col. 6

ll. 44–53.  The Cell Phone Defendants seek to limit the term "computer" to a "personal

computer" wherever it is used.  The Court finds this limitation is unwarranted.

A "computer" is "a device that processes data."

With regard to the "browser" terms, the Cell Phone Defendants seek to import two

different limitations to the construction of the term "browser" – a personal computer and HTML

documents.   In response, Fotomedia notes that the specification discloses images (such as GIF

or JPEG) that are also viewable in a web browser.  *See* '774 Patent at col.12 ll.30–33.  Further, the specification discloses a Java–enabled browser.  A Java–enabled browser would be capable of displaying more than just HTML pages.  At a minimum, such a browser could display applications written in a version of Java.  Therefore, the Court rejects the defendants' proposed construction of this term.

A "browser" is "a computer application for browsing a network, such as the internet"

### 13.    "message" and "message address"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"message"* | A notice that can be sent or received electronically | Email |
| *"message address"* | Information used to send or receive a message | Email address |

The Cell Phone defendants separately seek to limit a "message" to an "email."  They argue that the patentees told the Examiner during prosecution of the '936 continuation patent that "message" meant "email message."[7]  They urge the Court to apply this definition to claims of the earlier '774 patent as well.  *See Kothmann Enters., Inc. v. Trinity Indus., Inc.*, 394 F. Supp. 2d 923, 958 n. 25 (S.D. Tex. 2005) ("the prosecution history of a subsequently issued patent may be relevant for purposes of a related, previously granted patent").  Further, the defendants argue that throughout the specification, when the inventors refer to sending a "message," they always and

---

[6] The parties dispute the construction of the terms "computer," "receiving computer," and "sending computer."  For each of these terms, the Cell Phone Defendants seek to limit its scope to a "personal computer."

only refer to sending email messages.  *See, e.g.*, '774 patent, col. 12, ll. 36-55.  Similarly, the defendants argue that the specification discusses "address" only in the context of an "email address."  *Id*. at col. 5, ll. 31-35.

Fotomedia argues that prosecution amendments made to claims in the '936 patent do not affect the scope of the issued claims and are irrelevant.  Fotomedia contends that the patentees intended claim 17 of the '936 patent to be different from claim 1 of the '774 patent by including the phrase "email message."  Fotomedia further argues that email is not the only contemplated messaging system disclosed in the patent.  The Court agrees.  The term "message" need not be limited to an email message.

"Message" is construed to mean an "electronic notice," and "message address" is "an electronic address used to send a message."

## V.    Terms in Dispute – the '231 Patent

### 1.    "image metadata"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"image metadata"* | Information associated with image data, other than that particular image data itself | data about or describing an image, other than the image itself |
| *"metadata elements for an image"* | At least a portion of metadata | a plurality of data elements relating to an image, other than the image itself |

---

[7] During prosecution of the '936 patent, the patentee amended claim 8, changing:
   *"create a message including the identifier"*
   to:
   *"create an email message including the identifier that includes the URL associated with the display notifying the recipient that the display is available for viewing."*

The defendants contend that FotoMedia's proposed construction of "metadata" expands the scope of this term beyond what was disclaimed during prosecution. The patentees differentiated prior art, stating that the prior art was not "concerned with metadata, which is commonly defined as 'data that describes other data' or 'data about data.'" Therefore, the defendants contend that the scope of metadata should be limited to it being about data rather than being anything "associated with the image."

Fotomedia argues that because the specification recites the phrase "metadata associated with an image" multiple times, it is entitled to its proposed construction. *See, e.g.,* '231 patent, at col. 3 ll. 53–55 ("The present invention provides an improved method for allowing users to access metadata associated with a digital image file.").

The Court finds that the general understanding of the term "metadata" in the art is consistent with what the applicants stated to the examiner – it is data about data. The fact that it is also associated with an image file does not necessarily make this definition improper. The Court, therefore, construes "metadata" as "data associated with and about the image, other than the image itself."

The related dispute over "metadata elements" is whether the construction of these elements needs to incorporate the reference to the image, and whether a plurality is required. The claim language reads "defining metadata elements for an image." Therefore, the defendants argue that metadata elements must be variables for an image that can store the data. *See, e.g.*, '231 patent, col. 3, ll. 56-67 (discussing how metadata elements are defined for an image file and how metadata elements are populated with data). The defendants argue that construing these elements as just some random portion of the metadata would fail to acknowledge the discrete

nature of the metadata – whereby each of these elements can be accessed individually.[8]   The Court agrees.

"Metadata elements for an image" means "a plurality of data elements relating to an image, other than the image itself."

## 2.     "role(s)"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"role(s)"* | designation(s) for access privileges, to which one or more users may be associated | intermediary designations to bring together collections of users and collections of permissions |

Fotomedia seeks to categorize roles in terms of user's access privileges, while the defendants define it in terms of a combination of privileges with the users themselves.   The relevant part of the specification reads:

> Particular roles (e.g., job roles) are then associated with the individual metadata elements defined for the image, and each role is assigned certain access privileges for the metadata element to which they are associated, such as read, write, and modify. All users who will access the image are assigned particular roles.

'231 patent col. 3 l. 56 to col. 4 l. 9.

Fotomedia argues that a role without a user is still a role.  It contends that the defendants' construction introduces terms such as "collections" and "permissions" that are not supported by the intrinsic record.  The source that Fotomedia relies on to explain the meaning of this term defines roles as follows: "A role is both a collection of users on one side and a collection of

---

[8] Defendants contend that FotoMedia's own infringement contentions – that allege that defendant Yahoo's websites meet this limitation by "defining metadata elements such as variables and/or data structures, that references and/or store image metadata," – demonstrate FotoMedia's understanding of this term.

permissions on the other. The role serves as an intermediary to bring these two collections together."[9]  Defendants agree to this definition.  Defendants also point to the fact that both users and metadata elements are associated with "roles."  Figure 5 of the '231 patent specification lists the following example of roles: "Selling Agent," "Appraiser," and "Seller."  *See* '231 patent, Fig. 5.  The defendants contend that these cannot just be categories of access privileges, devoid of a relationship to a user.  Defendants further point out that during the recent prosecution of a continuation application from the '231 patent, FotoMedia took the position that "role based access control" is "[t]he identification, authentication and authorization of individuals based on their job titles within an organization."  Job titles, defendants argue, are intermediary designations between users and permissions.  Roles and access privileges cannot be the same.

The Court adopts the definition from the article cited by both parties.  A "role" is "an intermediary designation that brings together users and permissions."

### 3.     "associating users"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **"associating users who will access the image with roles"** | No construction necessary | For at least two roles, assigning a list of users who will access the image to the roles |

Fotomedia proposes that no further construction is necessary for this term.  Fotomedia argues the patent teaches that users are assigned roles, and there is no support in the intrinsic record for defendants' proposed construction, assigning a "list of users" to "roles."

---

[9] *See* Ravi S. Sandhu et al., *Role-Based Access Control Models*, *in* 29 IEEE COMPUTER No. 2, at 3–4

The defendants contend that this term should at least be limited to its plural form.  As part of their proposed construction, defendants also suggest that the term "associating" be interpreted as "assigning."  For this, defendants point to the specification that reads "[a]ll users who will access the image are assigned particular roles."  *See* '231 patent, col. 3, ll. 61-63.

In this context, the specification uses the terms "assign" and "associate" synonymously. Therefore, the Court finds that the scope of the claim should be limited to a system wherein users are indeed assigned roles.  The defendants' proposed requirement of a plurality of roles is also supported by the claim language and the specification.  One highlighted feature of the invention over the prior art is that it is able to intelligently discriminate between users based on these roles. *See* '231 patent, col. 1, 50-60.  There can be no discrimination between users if there is only a single role defined.

The Court, therefore, adopts the defendants' proposed construction.  "Associating users who will access the image with roles" is construed as follows: "For at least two roles, assigning a plurality of users who will access the image to the roles."

4.     **"associating roles"**

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| ***"associating the roles with individual metadata elements"*** | No construction necessary | for each of a plurality of metadata elements, assigning a list of roles to the metadata element |

---

(1996).

The dispute here is similar to the preceding one.  The defendants argue that the intrinsic record requires that roles must be associated with more than one metadata element and that the association be done on an "individual" basis.  This plurality is reflected in the claim language. The defendants argue that the plain meaning of the phrase "individual metadata elements" requires associating the roles with the metadata elements on an individual basis, *i.e.*, roles must be associated "for each of a plurality" of metadata elements.[10]  The defendants also point to following section of the specification for support:

> [after] defining metadata elements for an image file, particular roles (e.g., job roles) are then associated with the individual metadata elements defined for the image, and each role is assigned certain access privileges for the metadata element to which they are associated.

'231 patent, at 3:54-60.

FotoMedia responds by arguing that the claim only requires associating roles with metadata elements, and that there is no support for a specific type of association such as assigning a list of roles to each of at least two metadata elements.

As with the "associating users" term, a key feature of the invention claimed by the inventors is the ability to discriminate between various types of users and roles in providing access to the various elements of the image data.  As such, the Court adopts defendants' proposed construction for this term.

"Associating the roles with individual metadata elements"  means "for each of a plurality of metadata elements, assigning a pluraliy of roles to the metadata element."

---

[10] The defendants also point to an office action response wherein the applicants differentiated a prior art that allowed associating access rights with sets of images, such as photo albums.  This prosecution history, however, is irrelevant to the issue of associating metadata elements of a single image.

### 5.     "request for access to the metadata"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"a request for access to the metadata"* | a request to, for example, view, add, edit, modify, read, write, etc., metadata, wherein the request may be made independently, or in conjunction with any other request | a request to access one or more metadata elements apart from a request for the image |

The parties dispute whether a request for metadata may accompany a request for any other type of information, i.e. whether "combined" requests are within the scope of this term. According to the defendants, claim differentiation requires that "a request for access to the metadata" is limited to requests for metadata, not anything else. The defendants contend that the applicants clearly differentiated requests that seek only metadata from requests that seek both metadata and the image. *See* '231 patent, Cls. 25, 33. Therefore, defendants argue, only the later claims, namely 25 and 33, should be entitled to the scope of the "combined" requests.[11]  In addition, the defendants point to dependent claim 3, which adds the additional limitations "allowing the user to read, write, or modify the metadata."  According to the defendants, Fotomedia's proposed construction, including read, write, and modify in the independent claim term, would render claim 3 meaningless.

Fotomedia points to the specification for support that a request for access to metadata may be made in conjunction with any other request: "After the metadata elements in the image file has [sic] been populated with data and stored on a server or other device, users may make requests from the server to access the image and its metadata." '231 patent col. 3, l. 65 - col. 4, l.

---

[11] The defendants also contend that the patentee highlighted this ability during his deposition.  The Court agrees with Fotomedia that inventor testimony is irrelevant here.

2. Furthermore, Fotomedia argues, claims 3, 24, and 33 have other differences in scope than the one highlighted by the defendants.

The Court finds the doctrine of claim differentiation applicable here. The patentee knew how to refer to a request for access to both metadata and the image. The Court cannot now interpret both of these claim terms to mean the same thing.

"A request for access to the metadata" is "a request to access one or more metadata elements apart from a request for the image."

### 6.     "user's role determined from the request"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"the user's role is determined from the request"* | Role is determined from information related to the request | the user's role is determined from a user ID, class ID, group ID or information about access type contained in the request |

The defendants argue that the scope of the term should be limited to the only "types" of information that is disclosed in the specification. They point out that the specification indicates that the user ID, the class ID, the group ID and the information about access type are all information "from the request" that are used to determine a user's role. *See* '231 Patent, at col. 3, ll. 61-65, col. 4, ll. 64-67. Defendants argue that Fotomedia's proposed definition encompassing any "information related to the request" is too broad. The claim language uses the words "from the request," not from any information that is somehow "related."

Fotomedia points out that the specification describes that "[i]n response to receiving a request for access to the metadata by a particular user, the user's role is determined from the

request and the user's role is compared to the roles associated with the metadata elements to determine which metadata elements to make available to the user." '231 Patent, col. 2, ll. 3–5. Therefore, Fotomedia argues, a user's role is not limited to being determined from a particular type of data. Fotomedia further argues that because claim 1 states that the user's role is determined "from the request," the Court should not limit the construction of this term to information "in" the request.

After considering the parties' positions, the Court concludes that the role information is contained within the request itself and should be limited to at least the categories of identifiers listed in the specification, rather than the broad construction that Fotomedia seeks. The user's role is determined from a user ID, class ID, group ID or information about access type contained in the request.

The phrase "the user's role is determined from the request" means that "the user's role is determined from a user ID, class ID, group ID or information about access type contained in the request."

### 7. "particular user"

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| *"particular user"* | one specific user | authenticated user |

The dispute is whether a user needs to be authorized first to request access to metadata. The defendants contend that the '231 patent relates to controlling users' access to data, and Fotomedia's adoption of the English dictionary meaning of "particular" fails to acknowledge this. Defendants argue that to determine a user's role(s) and privileges, the system must be able

to ascertain the identity of a user and distinguish that user from others. Otherwise, the system would not be able to limit the access to metadata.   Hence, the defendants contend there is a need for the user to have been authenticated.

The specification discloses that "[i]n a preferred embodiment, the request includes the user's ID and identifies the type of access desired.  The user is then authenticated and assigned the appropriate role for the specific image requested based on the user ID in step 202."  *See* '231 Patent, col. 4, l. 66 - col. 5 l. 3.  Plaintiff argues that nothing in the claims requires that the authentication be done before a user's request is received.  Fotomedia points to Figure 6 in the specification as showing that the "receive user's request to access the image file and its metadata" step is done before authenticating the user.

The claim language does not clearly describe the authentication step.  The claim recites: "receiving a request for access . . ., wherein the user's role is determined from the request."  Although an authentication step must occur at some point, it is improper to read in a requirement that only authenticated requests arrive.

A "particular user" is, therefore, "a user who may be authenticated."

### 8.     means-plus-function terms in the '231 patent

| Claim Language | FotoMedia's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| ***means for defining metadata elements for an image***<br><br>**Function**(***Agreed***): *defining metadata elements* | **Structure**: a server, a database, an image file, a web browser or software application, or combination of portions thereof, or the structures described in Figures 2, 3 and 5 and the equivalents of the structures thereof. | **Structure**: No structure corresponding to the function is disclosed, as a consequence the claim is indefinite. |

| *means for associating users who will access the image with roles*<br><br>**Function***(Agreed):* *associating users who will access the image with roles* | **Structure**: a list, a table, the data structures described in Figure 5, a database, a server including software accessible thereby, or portions or combinations thereof and the equivalents of the structures thereof. | **Structure**: No structure corresponding to the function is disclosed, as a consequence the claim is indefinite. |
|---|---|---|
| *means for associating the roles with individual metadata elements*<br><br>**Function***(Agreed):* *associating the roles with individual metadata elements* | **Structure**: a list, a table, the data structures described in Figure 5, a database, a server including software accessible thereby, or portions or combinations thereof and equivalents of the structures thereof. | **Structure:** No structure corresponding to the function is disclosed, as a consequence the claim is indefinite. |
| *means for receiving a request for access to the metadata by a particular user, wherein the user's role is determined from the request* | **Function:** *receiving a request for access to the metadata by a particular user and determining a user's role from the request*<br><br>**Structure:** a server, a software application or portions or combinations thereof, or the structures described in Figure 1 and the equivalents of the structures thereof. | **Function:** *receiving a request from a user to access metadata for an image, wherein the request is separate from a request to access an image that also returns the metadata for the image*<br><br>**Structure:** No structure corresponding to the function is disclosed, as a consequence the claim is indefinite. |

The defendants argue that for each of these terms, FotoMedia's proposed structures, with bare references to software applications and computers, fail as a matter of law. Both parties cite to this Court's *Superspeed* opinion as the standard for supporting structure for such means plus function terms. *Superspeed, LLC v. Int'l Bus. Machs. Corp*., No. 2-07-CV-89, 2009 WL 383255 (E.D. Tex. Feb. 11, 2009). Defendants argue that, in *Superspeed*, this Court found that at least a summary of an algorithm must appear in the specification before the Court can find supporting

means for a means-plus-function term.  Defendants contend that the means-plus-function limitations of claims 9-11 fail to clearly link the proposed structures with the recited functions. The Court agrees.  There are no detailed algorithms or flowcharts to support any of the means plus function claim terms that are in dispute here.  The Court concludes that these terms are indefinite.  *Aristocrat Techs. Aus. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1337 (Fed. Cir. 2008) (finding that the means-plus-function limitations of a claim lacked sufficient disclosure of structure where the patent did not disclose the required algorithm or algorithms, and a person of ordinary skill in the art would not recognize the patent as disclosing an algorithm).

## VI.     Conclusion

The court adopts the constructions set forth in this opinion for the disputed terms of the patents.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the court.

SIGNED this 21st day of July, 2009.

CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE